# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>**Phillip B. Gray,**<br><br>        **Debtor.** | **Bankruptcy Case<br>No. 13-41018-JDP** |

## MEMORANDUM OF DECISION

**Appearances:**

> Steven L. Taggart, Maynes Taggart, PLLC, Idaho Falls, Idaho, Attorney for Debtor Phillip B. Gray.

> Lane Erickson, Racine, Olson, Nye, Budge & Bailey, Chtd., Pocatello, Idaho, Attorney for Ross and Christina Rinas.

> Kathleen A. McCallister, Chapter 13 Trustee, Meridian, Idaho.

### *Introduction*

Creditors Ross and Christina Rinas (the "Rinases") filed an

MEMORANDUM OF DECISION – 1

application for an administrative expense under § 503(b)[1] for the attorneys

fees they incurred in connection with their efforts to dismiss the

bankruptcy case of Phillip B. Gray ("Debtor").  Dkt. No. 95.[2]  Debtor and

chapter 13 Trustee Kathleen McCallister ("Trustee") objected to the

Rinases' application.  Dkt. Nos. 96; 104.  In addition, Trustee objected to the

amount of the Rinases' proof of claim filed in Debtor's case.  Dkt. No. 99.

The Court conducted a hearing concerning the application and claim

objection on September 9, 2014.  At the conclusion of the hearing, the Court

took the issues under advisement.  This Memorandum of Decision sets

forth the Court's findings of fact, conclusions of law, and decision

concerning the issues.  Rules 9014 and 7052.

### *Facts*

On May 28, 2010, Debtor and his ex-spouse Colleen Erickson

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101 – 1532, and all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001 – 9037.

[2]  Unless otherwise indicated, docket references are to case number 13-41018-JDP.

MEMORANDUM OF DECISION – 2

("Erickson") contracted to sell a mental health care business they owned

known as Life Center for Change ("LCFC") to the Rinases.[3]  The

transaction generated a dispute, which resulted in litigation.  On May 16,

2013, the Rinases obtained a default judgment in Idaho state court against

Debtor in the amount of $77,451.83 (the "Judgment").  *See* Proof of Claim,

5-2 at 5.[4]  Although the Rinases asserted claims against Debtor in state

court for breach of contract, unjust enrichment, and fraud,[5] the Judgment

did not specify the basis for the damages it awarded.[6]

---

[3]  A copy of the parties' contract of sale is attached as an exhibit to the
exception to discharge complaint the Rinases filed against Debtor in this
bankruptcy case.  Adv. No. 14-08016, Dkt. No. 1-1.

[4]  Erickson was a third-party defendant in the state court case, however,
the Judgment was solely entered against Debtor.  As explained below, Erickson
was likely left off of the Judgment because she was a debtor in a bankruptcy case
pending at the time of entry of the Judgment.

[5]  The parties did not provide a copy of the state court complaint.  This
information is drawn from the exception to discharge adversary complaint
referenced above.  Adv. No. 14-08016, Dkt. No. 1 at ¶ 25.

[6]  The Court was not provided with the application for default judgment
that was referenced in the Judgment, which may have provided an insight as to
the basis for the damage award.  The Rinases proof of claim is also unclear as to
basis of the award.  In it, the Rinases allege that the "basis for the claim" is
"Breach of Contract/Fraud."  Proof of Claim 5-2 at 1.

MEMORANDUM OF DECISION – 3

Before entry of the Judgment, the state court addressed several

issues on summary judgment.  Notably, in one decision, the state court

determined that a genuine issue of material fact existed as to whether

Erickson and Debtor materially breached the contract for the sale of LCFC,

and listed several allegations of fraud and breach of contract by the

Rinases against both Erickson and Debtor.  *Memorandum Decision on

Summary Judgment*, Adv. No. 12-08053, Dkt. No. 10-2 at 20-21.

Erickson filed a chapter 7 petition on April 23, 2012, before entry of

the Judgment.  Bankr. No. 12-40552-JDP, Dkt. No. 1.  On October 12, 2012,

the Rinases filed an amended adversary complaint in Erickson's case

seeking an exception to discharge pursuant to § 523(a)(2)(A), (a)(2)(B), and

(a)(4) for the damages they claimed to have suffered due to alleged fraud

by Erickson in the sale of LCFC.  Adv. Proc. No. 12-08053, Dkt. No. 10.[7]

On November 18, 2013, the adversary proceeding against Erickson was

settled by the parties, with Erickson agreeing to pay the Rinases $6,000 in

---

[7] At the hearing on these issues the Court was asked to take judicial notice of only the amended adversary complaint filed against Erickson in Adversary Proceeding No. 12-08053.  The Court has done so.

MEMORANDUM OF DECISION – 4

installments.  *See* Trustee's Exh. No. 200, Dkt. No. 107.[8]

Debtor filed a chapter 7 petition on August 16, 2013.  Dkt. No. 1.

The Rinases initially filed a proof of claim in Debtor's case for $130,090.30,

based, in part, upon the Judgment.  Proof of Claim 5-1.  After the

bankruptcy case was converted to chapter 13, Trustee objected to the

Rinases' proof of claim on several grounds.  Dkt. No. 99.  Trustee argued

that the proof of claim should be limited to the Judgment, together with

some allowance for interest accruing before the filing of the bankruptcy

case.  *Id.*  Trustee also argued that Rinases' claim against Debtor must be

credited for the Erickson settlement payments of $6,000, because under

applicable law, that amount reduces Debtor's liability to the Rinases under

the Judgment.  *Id.*[9]  The Rinases thereafter filed an amended proof of claim

---

[8]  The settlement agreement includes a promissory note signed by
Erickson where she agreed to pay $6,000 in 12 monthly payments of $500, which
were to begin in January 2014.  The Court has no reason to believe that Erickson
has not complied with the promissory note and, according to its terms, full
payment should occur by December 2014.

[9]  Trustee further argued that the Rinases' claim should be reduced by
$33,000 because that amount "represents the balance due on the purchase price
that the Rinases were to pay to [] Debtor and [Erickson] for the purchase of
[LCFC] but which the Rinases never paid though they continued to operate the

MEMORANDUM OF DECISION – 5

on August 20, 2014, reducing their claim to the Judgment amount, with

interest, to $78,476.74.  Proof of Claim 5-2.  At the hearing on the objection

to the proof of claim, Trustee took issue with the amended proof of claim

only to the extent that it did not include a credit for the Erickson

settlement of $6,000.

On February 14, 2014, the Rinases filed a motion to dismiss Debtor's

chapter 7 case for "abuse" under § 707(b).  Dkt. No. 50.  On the same day,

the Rinases filed an adversary complaint against Debtor in which, similar

to the allegations they had made against Erickson, they asserted that

Debtor had engaged in fraud in the sale of LCFC, and they requested that

the Judgment be excepted from discharge pursuant to § 523(a)(2)(A),

---

business."  Dkt. No. 99 at 2-3.  Trustee offered no documentary evidence
regarding this amount in her objection, and failed to mention this requested
reduction, or offer any proof of this amount, at the hearing on the objection to the
proof of claim.  The Court presumes this argument has been abandoned by
Trustee.  Even if Trustee persists in this argument, the Court rejects it for lack
any evidentiary support.

MEMORANDUM OF DECISION – 6

(a)(4), and (a)(6).  Adv. No. 14-08016, Dkt. No. 1.[10]

On May 6, 2014, the Court held an evidentiary hearing on the

Rinases' motion to dismiss Debtor's chapter 7 case.  After submission of

evidence by the Rinases, Debtor made an oral motion to convert his case to

one under chapter 13 pursuant to § 706.  The Court granted Debtor's

motion and converted the case.  Dkt. No. 68.

After Debtor's case was converted, the Rinases filed their

application for an administrative expense for the attorney's fees they

incurred in pursuing the § 707(b) motion to dismiss, which they claim

amounted to $17,134.02.  Dkt. No. 95.  Debtor and Trustee objected to this

request.  Dkt. Nos. 96; 104.  The Court conducted a hearing on July 29,

2014, and required the Rinases to file a brief in support of their application,

---

[10]  At the hearing, the Court was asked to take judicial notice of the
adversary proceeding complaint, Adv. Proc. No. 14-08016-JDP, Dkt. No. 1.  The
Court has done so.  According to the docket, the adversary proceeding was
resolved by stipulation of the parties wherein Debtor agreed the amount in the
Rinases' proof of claim will be excepted from discharge in Debtor's bankruptcy
case, and that any amount due on the Rinases' allowed proof of claim remaining
after Debtor's chapter 13 plan is completed will be paid within 180 days after the
date the chapter 13 case closes.  *Id.*

MEMORANDUM OF DECISION – 7

allowed Debtor and Trustee an opportunity to respond, and set this matter

for further hearing.  Dkt. No. 98.  The parties filed the requested briefing.

Dkt. Nos. 102, 104, 105, and 106.  On September 9, 2014, the Court held a

continued hearing on the issues presented.  Dkt. No. 107.  The parties

appeared and presented evidence and argument.  The Court thereafter

took the issues under advisement.

### *Analysis and Disposition*

There are two issues pending before the Court: (1) whether the

Rinases should be allowed an administrative expense for the attorney's

fees and costs they incurred in pursuing the § 707(b) motion to dismiss;

and (2) whether the Rinases' proof of claim should be reduced by $6,000

based upon the Erickson settlement payment.

## I.  Administrative Expense Priority.

The Rinases argue they should be allowed a priority administrative

expense pursuant to § 503(b).  They contend that, solely through their

efforts in pursuing the § 707(b) motion to dismiss, Debtor's chapter 7 case

MEMORANDUM OF DECISION – 8

was converted to chapter 13, which will result in a significant dividend to

Debtor's creditors.  Because of this, the Rinases believe they should recover

the attorney's fees they incurred in pursuing the dismissal motion.  Debtor

and Trustee disagree with this conclusion, and contend that none of the

provisions of § 503(b) allow an administrative expense in this case.

A.  Applicable Law

Administrative expenses allowed under § 503(b) are afforded

priority in payment in bankruptcy cases.  *See* § 507(a)(2) (providing second

priority payment status to allowed § 503(b) administrative expenses).

Section 503(b) sets forth a nonexclusive list of administrative expenses.  *In*

*re Cent. Idaho Forest Prods.*, 317 B.R. 150, 157 (Bankr. D. Idaho 2004) (citing

§ 102(3) and *Texas Comptroller of Pub. Accounts v. Megafoods Stores, Inc. (In re*

*Megafoods Stores, Inc.)*, 163 F.3d 1063, 1071 (9th Cir. 1998)).  The party

asserting an administrative expense bears the burden of proving its claim.

*Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.)*, 66 F.3d 1091,

1094 (9th Cir. 1995).  While bankruptcy courts have broad discretion in

MEMORANDUM OF DECISION – 9

determining whether a claim is entitled administrative expense status, the

courts are instructed to narrowly construe § 503(b).  *In re Azevedo*, 485 B.R.

596, 601 (Bankr. D. Idaho 2013) (citing *In re DAK Indus., Inc.*, 66 F.3d at

1094).

Section 503(b)(1)(A) provides that administrative expenses shall be

allowed, including, "the actual, necessary costs and expenses of preserving

the estate . . . ."  For costs and expenses to qualify under this provision,

courts apply a two-part test, and ask: (1) whether the expense arose from a

transaction with the bankruptcy estate; and (2) whether the transaction

directly and substantially benefitted the bankruptcy estate.  *In re Azevedo*,

485 B.R. at 600-01 (citing *Abercrombie v. Hayden Corp. (In re Abercrombie)*,

139 F.3d 755, 757 (9th Cir. 1998); *In re DAK Indust., Inc.*, 66 F.3d at 1094;

*Hopkins v. Idaho State Univ. Credit Union (In re Herter)*, 464 B.R. 22, 32

(Bankr. D. Idaho 2011)).

Section 503(b)(3)(B) provides for an administrative expense for "the

actual, necessary expense, other than compensation and reimbursement

MEMORANDUM OF DECISION – 10

specified in paragraph (4)[11] of this subsection, incurred by— (B) a creditor

that recovers, after the court's approval, for the benefit of the estate, any

property transferred or concealed by the debtor[.]" As can be seen, the

express language of this statute requires that a creditor obtain court

approval for its actions *before* any recovery is obtained through the

creditor's efforts.  *See Arab Monetary Fund v. Hashim (In re Hashim),* 379 B.R.

912, 921 (9th Cir. BAP 2007) ("Although § 503(b)(3)(B) is often described as

a 'prior permission' requirement, precision requires sharper focus. The

statute does not mandate that judicial approval be obtained before the

action is filed. Rather, it authorizes administrative expense awards only if

the court approves the action before recovery is obtained."); *In re Central*

*Idaho Forest Prods.,* 317 B.R. at 157 ("To allow an administrative expense to

---

[11]  Section § 503(b)(4) provides an administrative expense for:

> reasonable compensation for professional services rendered
> by an attorney or accountant of an entity whose expense is
> allowable under subparagraph . . . (B) . . . of paragraph (3) of
> this subsection . . . .

MEMORANDUM OF DECISION – 11

a party for the recovery of a transferred or concealed asset *without* that

party obtaining prior Court approval, would be tantamount to deleting the

phrase from the statute.") (emphasis in original)).

B.  Application of Law to Facts

The Court concludes that the Rinases have not shown that their legal

expenses incurred in prosecuting the § 707(b) motion to dismiss Debtor's

case should be allowed as an administrative expense under § 503(b).

Specifically, the Rinases have not shown that their claim qualifies under

§ 503(b) generally, nor under the express provisions of § 503(b)(1)(A) or

(b)(3)(B).

First, the Rinases have not offered, nor has the Court been able to

locate, any authority which entitles a creditor to an administrative expense

under § 503(b) generally for successfully[12] prosecuting a § 707(b) motion to

_____

[12] Since the bankruptcy case was not dismissed as Rinases requested in
their motion, it is doubtful they were "successful."  However, for purposes of
this analysis, the Court presumes that, as Rinases allege, that Debtor elected to
voluntarily convert the case to chapter 13 solely to avoid dismissal.  Of course,
there is no direct proof of that in the record.

MEMORANDUM OF DECISION – 12

dismiss.  Construing § 503(b) narrowly, as required by the case law, the

Court therefore declines to expand the list of administrative expenses in

§ 503(b) to include the attorneys fees Rinases incurred.

The Court also concludes that the Rinases have failed to show their

attorney's fees incurred in prosecuting the § 707(b) motion were an

"actual, necessary costs and expenses of preserving the estate" for

purposes of § 503(b)(1)(A).  Again, the Rinases do not cite the Court to any

case in which a bankruptcy or appellate court has found such expense

qualifies under this provision.  Further, in applying the analysis under

§ 503(b)(1)(A), there is no proof that the Rinases participated in any

transaction with the Debtor's bankruptcy estate.  Therefore, the Rinases'

claim under this provision must fail.

Finally, the Rinases' claim under § 503(b)(3)(B) also lacks merit.

Here, the Rinases seek administrative expense status for their attorney's

fees incurred in their efforts to dismiss Debtor's chapter 7.  Of course, an

administrative expense for such fees is properly sought under § 503(b)(4),

MEMORANDUM OF DECISION – 13

but allowance requires the creditor that incurred the fees to qualify under

§ 503(b)(3)(B).  *In re Central Idaho Forest Prods.*, 317 B.R. at 156 n.8.  The

Court finds, however, that the Rinases do not qualify for such status.  As

noted, § 503(b)(3)(B) requires prior court approval before a creditor may

enjoy administrative expense status under this section.  It is undisputed

the Rinases did not obtain this Court's permission to pursue the recovery

of any transferred or concealed asset.  The Rinases contend this prior

permission requirement should not bar administrative expense status to

their claim.  But this argument was considered and rejected in *In re Central

Idaho Forest Prods.* as contrary to the express language of the statute, and

the Court similarly rejects it here.  In addition to this fatal flaw in their

arguments, it is also doubtful that the Rinases' efforts resulted in the

recovery of any transferred or concealed asset.  Instead, the record shows

that Debtor voluntarily converted his case to chapter 13, and as a result,

will pay his creditors through his chapter 13 plan in order to receive a

discharge.  Therefore, the Rinases have failed to prove their claim should

MEMORANDUM OF DECISION – 14

qualify under § 503(b)(3)(B).

For these reasons, the Rinases' application for an administrative expense will be denied.

## II.  Objection to Proof of Claim.

Trustee objects to allowance of the Rinases' proof of claim.  She argues there should be a credit against the claim for the $6,000 that Erickson paid them to settle the discharge litigation in her bankruptcy case because that amount reduces Debtor's liability for any damages resulting from the sale of LCFC.  The Rinases argue that because the Judgment was against Debtor alone, the full amount of that judgment represents their claim in Debtor's bankruptcy case.

A.  Applicable Law

A timely proof of claim, filed in accordance with Rule 3001, constitutes prima facie evidence of the validity and amount of the claim. § 502(a); Rule 3001(f); *see also In re Parrott Broadcasting Ltd. P'ship,* 492 B.R. 35, 38 (Bankr. D. Idaho 2013) ("*Parrott*")*; In re Schweizer,* 354 B.R. 272, 279

MEMORANDUM OF DECISION – 15

(Bankr. D. Idaho 2006).  The party objecting to the allowance of a claim

bears the burden "to produce evidence sufficient to negate the prima facie

validity of the filed claim.  If the objector produces evidence sufficient to

negate the validity of the claim, the ultimate burden of persuasion remains

on the claimant to demonstrate by preponderance of the evidence that the

claim deserves to share in the distribution of the debtor's assets." *Spencer

v. Pugh (In re Pugh)*, 157 B.R. 898, 901 (9th Cir. BAP 1993) (citing *In re

Allegheny Intern., Inc.*, 954 F.2d 167, 173 (3d Cir. 1992)); *see also Parrott*, 492

B.R. at 38.

Section 502(b) explains the circumstances under which the

bankruptcy court may disallow an otherwise proper proof of claim:

> Except as provided in [other nonrelevant provisions], if
> [an] objection to a claim is made, the court, after notice
> and a hearing, shall determine the amount of such claim
> in lawful currency of the United States as of the date of
> the filing of the petition, and shall allow such claim in
> such amount, except to the extent that— (1) such claim
> is unenforceable against the debtor and property of the
> debtor, under any agreement or applicable law for a
> reason other than because such claim is contingent or
> unmatured . . . .

MEMORANDUM OF DECISION – 16

Here, under § 502(b)(1), the Court's must determine whether "any

agreement or applicable law" requires that the $6,000 settlement be

credited against the amount due on the Rinases' claim against Debtor.

*Travelers Cas. and Sur. Co. of Am. v. Pac. Gas and Elec. Co.*, 549 U.S. 443, 450

(2007) (citing *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 (2000)).

> Under Idaho law,
>
> the effect of a tortfeasor's release on other tortfeasors
> depends on whether there is joint and several liability.
> [Idaho Code] § 6-805(1) applies to "a release by an
> injured person of one (1) joint tortfeasor," i.e., there is
> joint and several liability, and allows the reduction of
> the claim against other tortfeasors for the amount of the
> settlement.  [Idaho Code] § 6-805(2), on the other hand,
> applies to "a release by the injured person of one (1) or
> more tortfeasors who are not jointly and severally liable
> to the injured person" and only allows a reduction
> when the release so provides.

*Horner v. Sani-Top, Inc.*, 141 P.3d 1099, 1104 (Idaho 2006) (quoting Idaho

Code § 6-805); *see also Saint Alphonsus Diversified Care, Inc. v. MRI Assocs.,*

*LLP*, ___ P.3d ___, 2014 WL 3891976, at *17 (Idaho Aug. 4, 2014) ("Under

[Idaho Code §] 6-805(1), a release by the injured person of one tortfeasor

MEMORANDUM OF DECISION – 17

'reduces the claim against the other tortfeasors in the amount of consideration paid for the release . . . .'").

Here, the Judgment against Debtor was likely based upon the fraud he and Erickson perpetrated on the Rinases. Fraud is a tort, and Debtor is, therefore, a joint tortfeasor, or in other words, "one of two or more persons jointly or severally liable for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Idaho Code § 6-803(4). Under Idaho law, "[a] party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were acting in concert or when a person was acting as an agent or servant of another party. As used in this section, 'acting in concert' means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act." Idaho Code § 6-803(5).

On the other hand, arguably, the damages represented by the Judgment were intended to compensate the Rinases for the breach of

MEMORANDUM OF DECISION – 18

contract allegedly committed by Debtor and Erickson.  In Idaho, "[t]he

universal . . . rule is that contract damages are offset pro tanto by the

amount of the settlement with a co-obligor.  This is simply a manifestation

of the rule that a contracting party should not receive more than was

bargained for."  *Evanow v. M/V Neptune*, 163 F.3d 1108, 1119 (9th Cir. 1998)

(citing 2 Samuel Williston & Walter H.E. Jaeger, *Williston on Contracts* § 341

(3d ed. 1959); *Restatement (Second) of Contracts* § 294(3) & cmt. f. (1979)).

### B.  Application of Law to Facts

While on this record it is unclear whether the Judgment against

Debtor was based upon the fraud (*i.e.,* a tort) or based upon Debtor's

breach of the contract to sell LCFC to the Rinases, the impact of the

Erickson settlement payment on Debtor's liability is the same.  The

Erickson settlement occurred in the context of the adversary complaint

filed against her in her bankruptcy case.  That complaint alleged Erickson

made fraudulent statements and omissions in connection with the contract

for the sale of LCFC, and in her conversations with the Rinases about that

MEMORANDUM OF DECISION – 19

sale.  These allegations mirror the claims made by the Rinases in state court

against both her and Debtor, as explained by the state court in ruling on

motions for summary judgment.  *See Memorandum Decision on Summary*

*Judgment*, Adv. No. 12-08053, Dkt. No. 10-2 at 20-21.

Under these circumstances, the Court concludes that tort law

principles apply to determine the effect of the Erickson settlement on the

Rinases' claim in Debtor's bankruptcy case.  Seen in this fashion, Erickson

and Debtor were jointly and severally liable for their fraudulent statements

and omissions in the sale of LCFC, per Idaho Code § 6-803(4) and (5).

Therefore, Erickson's settlement with the Rinases inured to the benefit of

Debtor, and reduces his liability for damages for engaging in the same

fraudulent conduct in the sale of LCFC.  Idaho Code § 6-805(1); *Saint*

*Alphonsus Diversified Care, Inc.*, 2014 WL 3891976, at *17; *Horner*, 141 P.3d at

1104.

But even were contract principles to apply, the same reduction of

liability on Debtor's breach of the contract for sale of LCFC would occur.

MEMORANDUM OF DECISION – 20

Debtor, as a co-obligor under the contract for the sale of LCFC, is entitled

to credit for the Erickson payments made to the Rinases for their joint

breach of the contract.

By providing the Erickson settlement documents evidencing the

payments made by Erickson to the Rinases, Trustee successfully negated

the prima facie validity of the filed proof of claim.  The Rinases failed to

satisfy their burden to show by a preponderance of the evidence that the

full amount of the Judgment should be allowed as their claim in this case.

Instead, the amount of the Rinases' proof of claim must be reduced by

$6,000.

### *Conclusion*

For these reasons, the Rinases' motion for an administrative

expense will be denied, and Trustee's objection to the Rinases' proof of

claim will be sustained.  The Court will enter a separate order.

///

MEMORANDUM OF DECISION – 21

Dated:  November 3, 2014

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION – 22